IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAIUPU MYERS, | No. 2:13-CV-2209-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| CHECK SMART FINANCIAL, LLC, | |
| Defendant. | |

Plaintiff, who is represented by retained counsel, brings this civil action for workplace discrimination.[1] Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court is defendant's motion for summary judgment (Doc. 28).[2]

/ / /

---

[1] The action was removed to this court from the Butte County Superior Court based on diversity. See 28 U.S.C. § 1441(b).

[2] The matter was submitted on the record and briefs without oral argument pursuant to Eastern District of California Local Rule 230(g).

1

## I. BACKGROUND

This action proceeds on plaintiff's first amended complaint (Doc. 13), filed on February 6, 2015, against defendant Checksmart Financial, LLC.[3]  Plaintiff asserts the following claims:

| | | |
|---|---|---|
| | Claim 1 | Wrongful Termination in Violation of Public Policy |
| | Claim 2 | Breach of Implied Covenant of Good Faith and Fair Dealing |
| | Claim 3 | Intentional Infliction of Emotional Distress |
| | Claim 4 | Disability Discrimination |

### A.   **Plaintiff's Factual Allegations**

Plaintiff claims that, at all relevant times, defendant was duly organized under the laws of California and/or authorized to do business in Butte County, California, and that defendant was actually doing business in Butte County under the name "California Check Cashing Stores."  Plaintiff states that she began working for defendant on March 16, 2007, as a teller/cashier at defendant's Butte County location.  Plaintiff states that her employment was pursuant to an "oral employment contract" and that, at all relevant times, she performed her duties and obligations under that agreement.  Plaintiff alleges that she was terminated on April 3, 2012 "by Defendants at their address in 1959 Webster Street, Suite 200, Oakland, California 94612" because of her pregnancy.  According to plaintiff, her termination violates public policy as well as California law.

Plaintiff next states that, on September 25, 2012, she filed a complaint with California's Department of Fair Employment and Housing ("DFEH") against California Check Cashing Stores, LLC, and received a right-to-sue letter the same day.  Plaintiff filed the instant action by filing a complaint in the Butte County Superior Court on September 19, 2013.  The

---

[3] Plaintiff sought and was granted leave to amend her original complaint in order to substitute defendant Checksmart, LLC, for California Check Cashing Stores, LLC ("CCCS"), which plaintiff states she inadvertently named in the original complaint.  California Check Cashing Stores, LLC, is no longer a defendant to this action.

action was removed to this court based on diversity of citizenship.

### B. The Parties' Evidence

According to defendant, the following facts are undisputed:

1. Plaintiff was employed by CCCS as a teller/cashier in 2007.

2. Plaintiff's employment ended when CCCS' parent was acquired in 2011, but she was re-hired by defendant.

3. Plaintiff was an "at-will" employee of defendant and plaintiff's wage statements and W-2s identified defendant as her employer.

4. Plaintiff received defendant's employee handbook which stated that defendant would "consider requests for reasonable accommodations for disabling conditions related to pregnancy, childbirth, or related medical conditions if requested" and that the employee "must provide a certification from her medical provider setting forth her medical restrictions which includes the dates . . . the restrictions will be in place."

5. At all relevant times, defendant maintained an attendance policy providing that employees who fail to call in and report for work will be considered to have abandoned their employment.

6. In early 2012, while an employee of defendant, plaintiff requested leave related to her pregnancy and anticipated childbirth.

7. Plaintiff failed to include the required medical certification with her request.

8. Defendant sent plaintiff a letter on February 17, 2012, asking plaintiff to submit a medical certification by March 12, 2012, warning plaintiff that the failure to provide the medical certification could result in denial of the requested leave.

9. Defendant sent plaintiff a second letter on March 13, 2012, informing plaintiff that her request for leave had been denied because she did not provide the medical certification, but that the denial could be reconsidered if plaintiff provided the medical certification by March 26, 2012, after which time plaintiff's request for leave would be considered withdrawn.

10. Defendant sent plaintiff a third letter on March 28, 2012, making a final request for the medical certification and informing plaintiff that the certification is "necessary to approve your leave of absence and secure your position with the company."

///

///

|   |   |   |
|---|---|---|
| | 11. | On April 4, 2012, defendant informed plaintiff that her by-then prolonged absence from work was considered unexcused due to her failure to provide the medical certification supporting her leave request, and that her employment had been terminated pursuant to defendant's attendance policy. |
| | 12. | On April 4, 2012, defendant also informed plaintiff that she could reapply for her position. |
| | 13. | Plaintiff reapplied but was considered ineligible for re-hire because she refused to repay a debt she owed defendant. |
| | 14. | On September 25, 2012, plaintiff filed a complaint with the DFEH against CCCS alleging that she had been terminated due to her pregnancy. |
| | 15. | Plaintiff has never filed a DFEH complaint against defendant. |

Defendant's statement of undisputed facts is based on the declaration of Pagle Helterbrand, defendant's Vice President for Human Resources, and exhibits thereto, as well as testimony from plaintiff's August 5, 2014, deposition.

According to plaintiff, contrary to defendant's assertions that plaintiff never provided the medical certification, she "gave Defendant the notes from the emergency room and a doctor's note on January 20, 2012, taking Plaintiff off work until after Plaintiff delivered her baby." Plaintiff also disputes defendant's statement that she "refused" to pay back a debt owed to defendant. According to plaintiff, she "didn't know how to pay for that" and defendant would not allow a payment plan. Plaintiff's position is based on her August 5, 2014, deposition testimony.

Plaintiff does not dispute that she was initially hired by CCCS in 2007, that CCCS was acquired in 2011, that her employment with CCCS ended and she was then hired by defendant, that defendant employed her as an at-will employee, or that defendant issued plaintiff's wage statements and W-2s. Plaintiff, however, offers the following additional facts as

/ / /

/ / /

/ / /

4

undisputed:

> 1. At all relevant times, her place of employment bore the identifying signs of CCCS.
>
> 2. Both defendant and CCCS are owned by the same company.

Plaintiff's statement of undisputed facts is supported by her May 18, 2015, declaration submitted in opposition to defendant's motion for summary judgment.

## II.  STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

        In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III.  DISCUSSION

Defendant argues that plaintiff's first, second, and third claims are subject to a two-year statute of limitations and are time-barred because the first amended complaint does not relate back to the date the original complaint was filed.  For the same reason, defendant argues that plaintiff's fourth claim is barred for failure to exhaust administrative remedies by filing a timely complaint against it with the DFEH and that the time to do so has passed.

These arguments were raised earlier in the context of defendant's opposition to plaintiff's motion for leave to amend.  In it's February 6, 2015, order granting leave to amend, the court observed:

> As to exhaustion, defendant CCCS argues that plaintiff cannot meet this jurisdictional requirement because she filed an administrative grievance against CCCS only and not Checksmart, the proposed additional defendant.  In response, plaintiff persuasively argues that the administrative grievance she filed against CCCS also applies as against Checksmart because such grievances must be liberally construed and the two entities were intertwined at the time.  According to plaintiff:
>
>> . . .Although Plaintiff did not file an . . . administrative claim [against Checksmart], Defendant, Checksmart, was still involved in the acts giving rise to the [administrative] claim.  Checksmart and California Check Cashing share identical owners and corporate officers.  Furthermore, Defendant, Checksmart, was Plaintiff's employer and as such was involved in the employment practices alleged in Plaintiff's claim.
>
> As to the statute of limitations, defendants' argument is predicated on the belief that the amended complaint would not relate back in time to the filing date of the original complaint because plaintiff knew of Checksmart's role when she filed the original complaint.  Defendant is correct in that plaintiff's claims against Checksmart would indeed be time-barred if she knew of Checksmart's role at the time she initially filed the action.
> The key issue is when did plaintiff know that Checksmart was, or could be considered, her employer?  If plaintiff knew, or should have known, this at the time she filed the complaint, the relation-back doctrine would not apply and amendment to add Checksmart as a defendant would be futile because all claims against such defendant would be time-barred.  Defendant attaches to its opposition to plaintiff's motion two earnings statements, from December 2011 and January 2012, clearly showing that "Checksmart Financial, LLC" is listed as plaintiff's employer.

This evidence could be sufficient to support the conclusion that plaintiff's claims would not relate back for statute of limitations purposes and, therefore, amendment should be denied as futile. Nonetheless, defendant's argument is not persuasive as a basis for denying leave to amend. First, defendant has provided no authority, and the court is aware of none, which says that the court may consider extrinsic evidence on a motion for leave to amend which will have the effect of forever shutting down plaintiff's claims against Checksmart. Second, the record is not sufficiently developed on the issue of whether the earnings statements would be sufficient to have put plaintiff on notice of the identity of her employer. Third, leave to amend should be granted freely.

Defendant's arguments – that plaintiff has not exhausted claims against Checksmart and that claims against Checksmart are time-barred – would more properly be litigated in the context of a motion to dismiss and/or a motion for summary judgment, particularly given that resolution of the issues will require consideration of extrinsic evidence.

At the outset, the court notes the parties do not dispute that plaintiff's first three claims are subject to a two-year limitations period which began in April 2012 and expired in April 2014. The parties also agree that plaintiff's fourth claim is subject to an administrative exhaustion requirement which can be satisfied by filing a complaint with the DFEH within one year of plaintiff's termination in April 2012. Finally, the parties agree that any lawsuit on plaintiff's fourth claim would have been due within one year of obtaining a right-to-sue letter, or by September 2013 in this case.

Thus, if the first amended complaint against defendant (which was submitted to the court in October 2014 and eventually filed in February 2015) does not relate back to the date this action was commenced in September 2013 against CCCS, the first, second, and third claims would be time-barred as against defendant. Likewise, plaintiff's fourth claim would also be barred because plaintiff did not commence an action against defendant by September 2013.

Under Federal Rule of Civil Procedure 15(c), where an amended complaint only changes the party, or naming of the party, against whom a claim is asserted in the original complaint, the amended complaint relates back to the date the original complaint was filed so long as, within 120 days of filing the original complaint, the newly named party both received notice of the action and "knew or should have known that the action would have been brought

8

against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). As the court observed in its prior order, the central issue is whether plaintiff made a mistake in thinking that CCCS was her employer at the time she initiated this action. If plaintiff was not reasonably mistaken as to who her employer was when she began this litigation, defendant prevails.

In her declaration file in opposition to defendant's motion for summary judgment, plaintiff admits that the employer listed on her earnings statements changed from CCCS to defendant. She also admits that she had been informed that CCCS "would become Checksmart."

At her August 5, 2014, deposition, plaintiff stated that she initially worked for CCCS. Plaintiff also stated she knew defendant – not CCCS – was her employer as of June 9, 2011. Specifically, when presented with a copy of an acknowledgment of receipt of defendant's employee handbook which plaintiff signed on June 9, 2011 (attached as Exhibit 4 to plaintiff's deposition), the following exchange occurred:

> Q:   . . . Does this refresh your recollection that you started working for CheckSmart Financial sometime around June 9 of 2011?
>
> A:   Yes.

Defendant also offers plaintiff's earnings statement for March 2, 2012 – before plaintiff was terminated – clearly lists plaintiff's employer as "Checksmart Financial, LLC." Similarly, defendant offers plaintiff's W-2 for the 2012 tax year showing that plaintiff's employer was "Checksmart Financial, LLC."

Given this evidence, particularly plaintiff's statements in her declaration and at her deposition, the court finds that the undisputed evidence establishes that plaintiff was not reasonably mistaken as to the identity of her employer as of the date she initiated this action. To the contrary, the undisputed evidence establishes that plaintiff knew, or at the very least should have known through the exercise of minimal diligence, that defendant was her employer, not CCCS.

### IV.  CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

    1.    Defendant's motion for summary judgment (Doc. 28) is granted as to all claims; and

    2.    The Clerk of the Court is directed to enter judgment in favor of defendant and close this file.

DATED:  August 10, 2015

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE